## Walton v. Commonwealth.

(Decided May 22, 1912.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Felonious Breaking Into Storehouse—Evidence— Sufficiency.—In a prosecution for the offense of feloniously break- ing into the storehouse of another with the intent to steal there- from, evidence examined and held sufficient to sustain a convic- tion.

2. Same.—A judgment of conviction in a criminal prosecution will not be reversed for error in admitting incompetent evidence, where it appears that the error was not prejudicial to the defend- ant's substantial rights.

CALVIN HURST, G. T. SIMPSON for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John Walton was indicted by the grand jury of Bell County for the offense of feloniously breaking into the storehouse of another with intent to steal therefrom. A jury found him guilty, and from the judgment predicated on the verdict, he prosecutes this appeal.

The evidence shows that Huston Hobbs owns a shop, or store room, in Pineville, Ky., where he is engaged in the business of repairing shoes. On the night of Satur- day, February 6, 1912, Hobbs, after closing his place of business and fastening every window, went away. Dur- ing the night, someone tore off a piece of tin which was over one of the windows, and unlatching one of the shut- ters, went into the store room and carried away a pair of boots and two pairs of shoes. The next morning Hobbs discovered that some of his stock was missing, and on examining the ground, which was covered with snow, found the tracks of the person who had broken in. The tracks were peculiar in that the left foot made a full track while the right foot did not, owing to the fact that the toe of that foot had not been pressed down into the snow. The evidence further shows that appellant had lost part of his right foot, and his right foot did not make a full track. When appellant was arrested, he was brought to the store and his feet were fitted into the

tracks. He objected to placing his feet into the tracks, but the officer and others present made him do so, and they all testify that the tracks corresponded to his shoes. It also appears that on the night of February 6, appellant went to the home of the sheriff and offered to sell him the pair of boots which had been taken from the store room. He told the sheriff that the boots cost $5, and that he wanted 50 cents on them so he could go to a show. The sheriff let him have the 50 cents, and the boots were left in the sheriff's possession. On the same night, appellant showed two pairs of the shoes that had been stolen to Jim Tinsley, and tried to sell them to Tinsley. Tinsley bought them, but when he received the information that the shoe shop had been broken into, he carried the shoes to appellant's home and left them there.

The evidence for the appellant is to the effect that he was present at Hobbs' shop on Saturday, and that the tracks which were subsequently discovered were made by him when there. He was not at the store room on Saturday night, and did not break into it. He claims that he purchased the shoes from a negro by the name of Tom Kyle. His mother and a girl who lived with his mother, and possibly one other witness, corroborate him in this statement.

In rebuttal, the Commonwealth showed that it was still snowing when appellant was at the shop during the day on Saturday. After that time it stopped snowing, and the tracks which fit appellant's shoes were made after it had stopped snowing. The Commonwealth also introduced Tom Kyle, who was then living in Knoxville, Tennessee. He testifies that he did not sell appellant any boots or shoes on the occasion in question, and appellant did not get the boots or shoes from him. On cross-examination, it developed that this witness had served a term in the Tennessee penitentiary. The Commonwealth also showed that the appellant's reputation for veracity was bad.

The facts of this case are materially different from those of Blankenship v. Commonwealth, 147 Ky., 768. In that case, twenty pairs of shoes, the property of the Northeast Coal Company, were stolen from a box car standing on a side track at Auxier Station, in Floyd County. It was not shown that the defendant had ever been at Auxier at or near the day when the shoes were

stolen. On the contrary, it appeared that he lived four-
teen miles from Auxier, and had not been at Auxier for
a year or more. The defendant claimed to have pur-
chased the shoes from his brother, Pete Blankenship.
Two witnesses, whose characters were not attacked, tes-
tified to the sale of the shoes by Atkins to Pete. Atkins
did not testify. The only evidence, therefore, tending to
establish the defendant's guilt, was his possession of
the shoes. The court, being of the opinion that his ex-
planation of such possession was entirely consistent with
his innocence, and as there was no other fact or circum-
stance that tended in the least degree to connect him
with the theft of the shoes, held that the trial court
should have directed the jury to find the defendant not
guilty. In this case, however, appellant was in town.
He had a defective foot, which made a peculiar track.
He objected to placing his foot in the tracks near the
store room. When he was compelled to do so by those
present, it was found that the track made by the left
shoe corresponded to the track made by his left foot,
and that the unusual track of the right foot found in the
snow corresponded to appellant's right foot, and was
accounted for by the crippled condition of his right foot.
Furthermore, the person who it is claimed sold the shoes
to appellant, was introduced on the trial, and swears
that he did not sell them. When we consider these facts
in connection with the fact of possession, coupled with
appellant's eagerness to sell the shoes immediately after
they had been taken from the store room, we conclude
that the evidence is sufficient to sustain the conviction.

While it is true that the court should not have per-
mitted to go to the jury evidence of the fact that appel-
lant had stated that he and the girl who lived with his
mother were married, the error of the court in this re-
spect was not prejudicial to appellant's substantial
rights.

The law of the case was presented to the jury by in-
structions which are not subject to criticism.

Judgment affirmed.